UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE SWANSBROUGH #489222,

       Plaintiff,                              Hon. Gordon J. Quist

v.                                                    Case No. 1:14-cv-1246

MICHAEL MARTIN, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

       This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>. (ECF No. 42). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted** and this action **terminated**.

## BACKGROUND

       The following allegations are contained in Plaintiff's complaint. (ECF No. 1). On an unspecified date, Plaintiff requested to receive a religious diet consistent with his Muslim faith. In April or May 2012, Donald Tompkins, Chaplain of the Lakeland Correctional Facility, administered to Plaintiff the "Muslim Religious Diet test." On November 4, 2013, Michael Martin, Special Activities Coordinator for the Michigan Department of Corrections, denied Plaintiff's request to participate in the "Muslim Religious Diet."

       Plaintiff initiated the present action alleging that Tompkins and Martin "unjustly denied" his request to participate in a religious diet. Plaintiff does not, however, clearly articulate the nature or basis of his claim. The Court has, therefore, interpreted Plaintiff's complaint as a claim alleging

violation of his First Amendment right to freely practice his religion. Defendants Tompkins and Martin now move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

As the Supreme Court has observed, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v. Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution"). Thus, while "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates nevertheless retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations," *Wolfish*, 441 U.S. at 545, as operating a prison is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner*, 482 U.S. at 85.

Accordingly, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be

accorded wide-ranging deference." *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

When reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights. *See Turner*, 482 U.S. at 85. The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Flagner*, 241 F.3d at 481 (quoting *Shabazz*, 482 U.S. at 349). The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. whether there are alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Turner*, 482 U.S. at 89-91.

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered

and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484.

With respect to which party bears the burden concerning the *Turner* analysis, the Supreme Court has held that "[t]he burden. . .is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). This statement clearly places on the prisoner the burden as to the last three *Turner* factors, but says nothing as to which party bears the burden as to the initial factor. As subsequent courts have concluded, the burden to articulate the rationale for a challenged action must rest with prison officials. As the Sixth Circuit observed:

> We note that while the burden is on the prisoner to disprove the validity of the regulation at issue. . .Defendants must still articulate their interest in the regulation. . .Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue.

*Figel v. Overton*, 121 Fed. Appx. 642, 646 n.2 (6th Cir., Feb. 4, 2005) (internal citations omitted); *see also*, *Sharp v. Johnson*, 669 F.3d 144, 156 (3d Cir. 2012) ("the prison has the burden of demonstrating the First *Turner* Factor").

The Court is persuaded by this reasoning and concludes, therefore, that with respect to the *Turner* factors, Defendant bears the initial burden to articulate a valid, rational connection between

the challenged action and the legitimate governmental interest which motivated such. This particular burden is "slight, and in certain instances, the connection may be a matter of common sense." *Johnson*, 669 F.3d at 156.

The evidence submitted by Defendants reveals that Plaintiff's request was denied because: (1) Plaintiff's "prisoner store food purchases show ongoing purchases of food that are neither kosher or halal" and (2) Plaintiff has been convicted of "Substance Abuse-Alcohol" while incarcerated. (PageID.197, 199). Plaintiff does not dispute these factual findings on which the decision to deny his request was made.

It is well recognized that prison officials have a legitimate penological interest in controlling the cost of special religious diets. *See, e.g., Green v. Tudor*, 685 F.Supp.2d 678, 698 (W.D. Mich. 2010) (recognizing that the State of Michigan "expends significant financial and administrative resources" providing prisoners with religious diets that are "expensive, diverting resources from other penological goals"); *see also*, *Berryman v. Granholm*, 343 Fed. Appx. 1, 6 (6th Cir., Aug. 12, 2009) (prison officials have a legitimate penological interest in controlling the cost of special religious diets). It is neither unreasonable nor improper for prison officials to deny special religious diets to prisoners who consume food and alcohol which is inconsistent with the requested diet. *See Berryman*, 343 Fed. Appx. at 6 (upholding the denial of a religious diet to a prisoner who consumed food products inconsistent with the diet in question).

It is also well recognized that prison officials have a legitimate interest in "maintaining discipline within the prison." *Id.* As Defendants note, permitting Plaintiff to participate in a religious diet program when he has a demonstrated history of consuming food and alcohol in violation of the tenets of his stated religion could negatively impact prison security as such could cause resentment

among prisoners who adhere to their faith's dietary restrictions. Finally, as Plaintiff indicated during his deposition, he is presently able to self-select items from the available food offerings that satisfy his religious dietary needs. (PageID.158). In sum, Defendants have established that there exists a valid, rational connection between their actions and the legitimate governmental interest put forward to justify such. The remaining factors all weigh in Defendants' favor for the reasons discussed herein.

Plaintiff responds to the present motion by asserting that because his religious beliefs are sincere prison officials are prohibited from depriving him of his preferred religious diet. The Court disagrees. Whether Plaintiff's religious beliefs are sincerely held does not terminate the analysis, but is merely its starting point. *See, e.g., Colvin v. Caruso*, 605 F.3d 282, 298 (6th Cir. 2010) ("the touchstone for determining whether a religious belief is entitled to free-exercise protection is an assessment of whether the beliefs professed are sincerely held, not whether the belief is accurate or logical"); *Bonnell v. Burnett*, 2011 WL 4533830 at *2 (E.D. Mich., Sept. 29, 2011) (recognizing that the *Turner* analysis applies only if the prisoner's religious beliefs are sincerely held, otherwise the *Turner* factors are inapplicable because the beliefs in question are not entitled to First Amendment protection in the first place).

Stated differently, if a prisoner's religious beliefs are not sincerely held the Court need not apply the *Turner* test because restriction of insincerely held religious beliefs does not violate the First Amendment. However, as *Turner* makes clear, a prisoner's sincerely held religious beliefs may nevertheless be restricted if the basis for such restriction is reasonably related to legitimate penological interests as determined by the multi-factor test articulated above. Thus, even if the Court assumes that Plaintiff's religious beliefs are sincerely held, Defendants are still entitled to summary judgment because the rationale for denying Plaintiff's religious diet request, based on undisputed facts, is reasonably

related to legitimate penological interests such as controlling the cost of religious dietary requests and maintaining prison discipline. Accordingly, the undersigned recommends that Defendants are entitled to summary judgment.[1]

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (ECF No. 42), be **granted** and this action **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: October 4, 2016

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge

---

[1] Defendant Tompkins also argues that he is entitled to summary judgment on the alternative ground that he was not involved in the decision to deny Plaintiff's religious diet request. The record, however, contains a memorandum authored by Tompkins in which he recommends that Plaintiff's request be denied. (PageID.172). Tompkins may not have made the *final* decision on Plaintiff's request, but this evidence presents a genuine factual dispute regarding Tompkins' involvement in this matter. Accordingly, this argument is rejected.